**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROKSOLANA PALIY, *on behalf of herself and all others similarly situated*, | Case No.: **25-cv-06102** |
| Plaintiff, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| -against- | |
| MEDICAL ANSWERING SERVICES, LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT

Plaintiff ROKSOLANA PALIY ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned attorneys, as and for her Class and Collective Action Complaint against Defendant MEDICAL ANSWERING SERVICES, LLC ("Defendant" or "MAS"), alleges upon personal knowledge as to herself and her own acts and experiences, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.       Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendant: (1) unpaid wages for off-the-clock pre-shift work (turning on computers, logging into ADP and other systems before clocking in), (2) unpaid wages for off-the-clock post-shift work (completing calls after scheduled shift end time), (3) unpaid overtime wages resulting from such uncompensated time, (4) liquidated damages, and (5) attorneys' fees and costs.

2.       Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), Article 19 § 650 *et seq.*, and Article 6 § 190 *et seq.*, that she and others similarly situated are entitled to recover from Defendant: (1) unpaid wages for off-the-clock pre-shift and post-shift work, (2)

unpaid overtime wages resulting from such uncompensated time, (3) liquidated damages, (4) statutory penalties for wage statement violations, and (5) attorneys' fees and costs.

3.      Defendant MEDICAL ANSWERING SERVICES, LLC is a nationwide provider of medical answering services, operating call centers throughout the United States. MAS employs over 300 employees, including approximately 200 customer service representatives who provide telephone answering and related services to medical facilities and healthcare providers across the nation.

4.      Plaintiff and other customer service representatives were required by Defendant to perform pre-shift work before they could clock in to Defendant's timekeeping system. Specifically, Defendant required employees to arrive at their workstations, turn on their laptop computers, log into Defendant's virtual private network, and sign into the ADP timekeeping system before they were permitted to clock in and begin receiving compensation. This mandatory pre-shift work took several minutes each day. Additionally, Defendant required Plaintiff and other customer service representatives to continue taking and completing customer calls beyond their scheduled shift end times. Employees were not permitted to clock out until they had completed their final call, even when calls extended past the scheduled end of their shifts. This resulted in regular post-shift work for which Defendant failed to compensate Plaintiff and other similarly situated employees. Defendant's systematic practices of requiring uncompensated pre-shift and post-shift work violated the FLSA and applicable state wage and hour laws.

5.      Plaintiff brings this wage and hour class action on behalf of herself and all similarly situated employees, who during the applicable state and federal limitations periods up to and including the present (the "Class Period"), were similarly underpaid by Defendant in violation of protections afforded under the FLSA and the laws and regulations of the following States:

I. Alaska: Alaska Wage and Hour Act, Alaska Statute §23.10.050 *et seq.*;

II. Arizona: Arizona Fair Wages and Healthy Families Act, A.R.S. § 23-340 *et seq.*, and the Arizona Minimum Wage Act Practice and Procedure A.A.C. R20-5-1201 *et seq.*;

III. Arkansas: Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.*;

IV. California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;

V. Colorado: Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.*, and the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101 *et seq.*;

VI. Connecticut: Connecticut Wage Act Conn. Gen. Stat. §§31-58, *et seq.*;

VII. Delaware: Delaware Minimum Wage Law, Delaware Code Title 19-90 *et seq.*;

VIII. District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;

IX. Florida: Florida's Unpaid Wages Statute, Fla. Stat. 448.08 *et seq.*;

X. Georgia: Georgia Minimum Wage Law, Official Code of Georgia Annotated O.C.G.A.§ 34-4 *et seq.*;

XI. Hawaii: Hawaii Payment of Wages and other Compensation, Hawaii Revised Statutes Title 21 §388-1 *et seq.*;

XII. Idaho: Idaho the Minimum Wage Law 44-1501*et seq.*, Hours Worked Act §44-1201*et seq.*, and the Liens, Mortgages and Pledges, Idaho Code § 45-601 *et seq.*;

XIII. Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;

XIV. Indiana: Indiana Wages Hours and Benefits, Ind. Code §22-2-2 et seq. Indiana Frequency of Wage Payments Ind. Code §22-2-5 *et seq.*;

XV. Iowa: Iowa Wage Payment Collection Law, Iowa Code §91A *et seq.*;

XVI. Kansas: Kansas Labor and Industries Law, Kan. Stat. Ann. §44-1201 *et seq.*;

XVII. Kentucky: Kentucky Wage Statutes, K.Y. Rev. Stat. Ann. §§ 337.275 *et seq.*;

XVIII. Louisiana: Louisiana's Wage Payment Act, Louisiana Revised Statutes §23:631 *et seq.*;

XIX. Maine: Maine Employment Practices Act, 26 Me. Rev. Stat. §§ 621-A, 626, 626-A, & 629, and the Maine Minimum Wage and Overtime Law, 26 Me. Rev. Stat. §§ 664 & 670;

XX. Maryland: Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 et seq., and the Maryland Wage Payment Collection Law, Lab. & Empl. § 3-501 *et seq.*;

XXI. Massachusetts: Massachusetts Minimum Fair Wage Law, Mass. Gen. L. ch. 151, §1A *et seq.*;

XXII. Michigan: Michigan Workforce Opportunity Wage Act, MCL §§ 408.411, *et seq.*;

XXIII. Minnesota: Minnesota Fair Labor Standards Act, Minn. Stat. § 177.25, and the Minnesota Payment of Wages Act, Minn. Stat. § 181.101 *et seq.*;

XXIV. Missouri: Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq.*;

XXV. Montana: Montana Minimum Wage and Overtime Compensation Act, MCA § 39-3-401 et seq., and the Montana Payment of Wages Law, MCA §39-3-201 *et seq.*;

XXVI. Nebraska: Nebraska's Wage and Hour Act, Neb. Rev. Stat. § 48-1201 *et seq.*, and the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq.*;

XXVII. Nevada: Nevada Minimum Wage Amendment of the Nevada Constitution, Nev. Const. art. 15, § 16, and the Nev. Rev. Stat. Chapt. 60;

XXVIII. New Hampshire: New Hampshire Minimum Wage Law, N.H. Rev. Stat. § 279:1 *et seq.*;

XXIX. New Jersey: New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.*; and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq.*;

XXX. New Mexico: New Mexico Minimum Wage Law, N.M. Stat. Ann. §50-4 *et seq.*;

XXXI. New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;

XXXII. North Carolina: North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1, *et seq.*;

XXXIII. North Dakota: North Dakota Labor and Employment Law., N.D. Cent. Code 34-01 *et seq.*, and the North Dakota Minimum Wage and Work Conditions Order N.D. Ain Code §4602-07-01 *et seq.*;

XXXIV. Ohio: Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*;

XXXV. Oklahoma: Oklahoma General Wage Law, O.S. §§40-165.1. *et seq.*;

XXXVI. Oregon: Oregon Minimum Wage Law, Oreg. Rev. Stat. §51-653, and the Oregon Rules Regulating Minimum Wage, Overtime and Working Conditions OAR 839-020-0000, *et seq.*;

XXXVII. Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;

XXXVIII. Puerto Rico: Puerto Rico Working Hours and Days Laws, 29 L.P.R.A. §§271, *et seq.*;

XXXIX. Rhode Island: Rhode Island Minimum Wage Act, R.I. Gen. Laws §§ 28-12-1, *et seq.*, and the Rhode Island Wages Act, R.I. Gen. Laws §§ 28-14-1, *et seq.*;

XL. South Carolina: South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*;

XLI. South Dakota: South Dakota Labor and Employment Laws, S.D.C.L. 60-1-1, *et seq.*;

XLII. Texas: Texas Minimum Wage Act, Texas Labor Code § 62.001 *et seq.*;

XLIII. Vermont: Vermont Wages and Medium of Payment Laws, 21 V.S.A. §§341, *et seq.*;

XLIV. Virginia: Virginia Minimum Wage Act, VA Code § 40.1 *et seq.*;

XLV. Washington: Washington Minimum Wage Act, R.C.W. 49.46.005, et seq.; and Washington Minimum Wage Rules, WAC 296-126 *et seq.*;

XLVI. West Virginia: West Virginia Minimum Wage and Maximum Hours Act, W. Va. Code §25-5C-1, *et seq.*;

XLVII. Wisconsin: Wisconsin Hours of Work and Overtime Rules, Wis. Admin. Code, §§DWD 272.01 et seq. and 274.01 *et seq.*; and

XLVIII. Wyoming: Wyoming Minimum Wages, W.S. 1977 §§27-4-201, et seq. and Collection of Unpaid Wages, §§27-4-501, *et seq.*

6.       Plaintiff PALIY further alleges, on an individual basis, pursuant the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, that Defendant discriminated and retaliated against Plaintiff for disclosing her disability, requesting reasonable accommodations, and taking protected medical leave. Specifically, Defendant terminated Plaintiff's employment on July 11, 2025, while she was on approved medical accommodation leave through July 31, 2025, and while she was receiving approved short-term disability and state disability benefits. Defendant refused to extend Plaintiff's medical accommodation despite medical necessity and her temporary disability, citing "business need" despite employing over 300 employees. Due to Defendant's unlawful actions against her, Plaintiff is entitled to recover from Defendant: (1) compensatory damages, (2) punitive damages, (3) lost wages and benefits, (4) emotional distress damages, (5) attorneys' fees and costs, and all other penalties the Court deems appropriate.

7.       To the extent that gap-time claims (claims for unpaid wages for hours worked up

to forty which do not implicate statutory minimum wage laws) or claims seeking damages for failure to pay for all hours of work, are not covered by the protection of a State's wage laws, Plaintiff further alleges that she and others similarly situated are entitled to recover from Defendant, the following pursuant to breach of contract and unjust enrichment: (1) wrongfully withheld or diverted payments, (2) punitive damages due to egregious conduct, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1331 as Plaintiff's claims arise under federal law, specifically the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, and the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* This Court has jurisdiction over Plaintiff's FLSA collective action pursuant to 29 U.S.C. § 216(b). This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367, including claims arising under the New York Labor Law, the New York State Human Rights Law, the New York City Human Rights Law, and the wage and hour laws of the other states identified herein.

9.     This Court has personal jurisdiction over Defendant MEDICAL ANSWERING SERVICES, LLC as Defendant's principal place of business is located at 375 West Onondaga Street, Syracuse, New York 13202, and Defendant conducts substantial business within the State of New York and within this judicial district.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, as Plaintiff worked remotely from her home located at 1673 West 10th Street, Apt 2, Brooklyn, New York 11223, and Defendant is subject to personal jurisdiction in this

District.

## PARTIES

11.     At all times relevant herein, Plaintiff ROKSOLANA PALIY was and is a resident of Brooklyn, Kings County, New York.

12.     At all times relevant herein, Defendant MEDICAL ANSWERING SERVICES, LLC was and is a limited liability company duly organized under and existing by virtue of the laws of the State of New York and having its principal place of business in New York at 375 West Onondaga Street, Syracuse, New York 13202.

13.     Defendant's business operates nationwide, employing Customer Service Representatives across the country who work under the same or similar policies and practices, including remote work arrangements from their homes throughout the United States.

14.     All of Defendant's operations are managed by the same executive management team operating from the same headquarters, which sets standardized policies and managerial training. Further, Defendant's operations are engaged in related activities, share common ownership, and have common business purposes.

15.     The Defendant engages in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of the Defendant handle goods and materials produced outside of New York (including computers, laptops, office supplies, and other items) that have moved in interstate commerce, and the Defendant is thus an employer subject to the jurisdiction of the FLSA.

16.     At all relevant times, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, State wage laws, and any regulations thereunder. At all relevant times, the work performed by Plaintiff and Class members was directly essential to the

business operated by Defendant.

17.     Plaintiff has personal jurisdiction to bring Rule 23 class claims for out-of-state Plaintiffs due to Defendant's headquarters and state of incorporation being located in New York State.  Thus, New York State is a State of general jurisdiction with respect to any claims made by Plaintiff and out-of-state Plaintiffs.

18.     Further, absent general jurisdiction, Rule 23 class claims for out-of-state Plaintiffs would still be appropriately heard by this Court for the reasons stated in the Third Circuit precedent *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 374 (3d Cir. 2022), which held the following:

> If the requirements of Rule 23 are met and the court decides to certify the class, the class "acquires an independent legal status." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013). The relevant entity for purposes of the litigation after certification is the class, not the individuals who make up the class. *See id.* Once certified, class actions "present 'a unitary, coherent claim' that moves through litigation at the named plaintiff's direction and pace." *Canaday*, 9 F.4th at 403 (quoting *Lyngaas v. Curaden AG*, 992 F.3d 412, 435 (6th Cir. 2021)). "[A]s a practical matter, a defendant litigates against only the class representative." *Lyngaas*, 992 F.3d at 435. Because of this, courts have considered absent class members in Rule 23 suits not to be "parties" for jurisdictional purposes. *See Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 297, 445 U.S. App. D.C. 417 (D.C. Cir. 2020) ( "[U]nnamed class members are treated as nonparties for other purposes, including jurisdictional ones."); *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445 (7th Cir. 2020) ("For cases relying on specific jurisdiction over the defendant, minimum contacts, purposeful availment, and relation to the claim were assessed only with respect to the named plaintiffs.").

> The Supreme Court itself has regularly entertained nationwide classes where the plaintiff relied on specific personal jurisdiction, without taking note of any procedural defects. For instance, *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011), involved a nationwide class brought in California against Wal-Mart, which was headquartered in Arkansas and incorporated in Delaware. *See Fourth Amended Complaint at ¶¶ 14, 90, Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137 (N.D. Cal. 2004), ECF No. 767. *Phillips Petroleum* involved a nationwide class action brought in Kansas against a defendant headquartered in Oklahoma and incorporated in Delaware. 472 U.S. at 799. In neither case did the Supreme Court find any jurisdictional deficiencies due to the presence of claims by absent out-of-state class members.

18.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or

such conditions have been waived.

## NATIONWIDE FLSA COLLECTIVE ACTION ALLEGATIONS

19.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt, hourly Customer Service Representatives (or similar titles) employed by Defendant nationwide within the three (3) years immediately preceding the filing of this Complaint through the date of final judgment ("FLSA Collective").

20.    At all relevant times, Plaintiff and other FLSA Collective members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay Plaintiff and other FLSA Collective members for all hours worked. Specifically, Defendant required all Customer Service Representatives to perform uncompensated pre-shift work, including turning on laptop computers, logging into Defendant's virtual private network, and signing into the ADP timekeeping system before they were permitted to clock in and begin receiving compensation. Additionally, Defendant required all Customer Service Representatives to continue taking and completing customer calls beyond their scheduled shift end times, and employees were not permitted to clock out until they had completed their final call, even when calls extended past the scheduled end of their shifts. This resulted in regular post-shift work for which Defendant failed to compensate Plaintiff and other similarly situated employees. These policies and practices resulted in Defendant's failure to pay Plaintiff and other FLSA Collective members for all hours worked, including overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek. The claims of

Plaintiff stated herein are essentially the same as those of other FLSA Collective members.

21.    Defendant's failure to pay for all hours worked was willful. Defendant knew or showed reckless disregard for whether its conduct violated the FLSA. Defendant intentionally and deliberately structured its timekeeping policies to avoid compensating employees for all time worked. By requiring employees to perform substantial work duties before clocking in and after clocking out, while maintaining actual or constructive knowledge of such work, Defendant willfully violated the FLSA. Accordingly, a three-year statute of limitations applies to Plaintiff's FLSA claims pursuant to 29 U.S.C. § 255(a).

22.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective members are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant's payroll and employment records. Notice can be provided to FLSA Collective members via first class mail to the last address known to Defendant, as well as by email to email addresses in Defendant's records.

## NATIONWIDE RULE 23 CLASS ALLEGATIONS

23.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt, hourly Customer Service Representatives (or similar titles) employed by Defendant nationwide on or after the date that is six (6) years prior to the filing of the Complaint in this case, or the relevant statutory period of each state's applicable labor law, through the date of final judgment (the "Rule 23 Class" or "Class Members").

24.    All said persons, including Plaintiff, are referred to herein as the "Rule 23 Class." The Class Members are readily ascertainable. The number and identities of the Class Members are

determinable from the records of Defendant. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

25.    The proposed Rule 23 Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number rests are presently within the sole control of Defendant, there is no doubt that there are approximately two hundred (200) members of the Rule 23 Class.

26.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Rule 23 Class, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 Class in separate actions. All the Class Members were subject to the same corporate practices of Defendant, as alleged herein, of: (i) failing to pay all wages, including overtime, due to time shaving caused by unpaid pre-shift work (turning on laptop computers, logging into Defendant's virtual private network, and signing into the ADP timekeeping system before being permitted to clock in); (ii) failing to pay all wages, including overtime, due to unpaid post-shift work (completing customer calls that extended beyond scheduled shift end times before being permitted to clock out), (iii) failing to provide all notices and statements as required under State law.

27.    Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

28.     Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

29.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Rule 23 Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Rule 23 Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

30.    Defendant and other employers throughout the country violate state wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31.    There are questions of law and fact common to the Rule 23 Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendant employed Plaintiff and Class Members within the meaning of the state wage laws;

b.    What were and are the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay Plaintiff and the Class Members;

c.    Whether Defendant required Plaintiff and Class Members to perform pre-shift work, including turning on laptop computers, logging into Defendant's virtual private network, and signing into the ADP timekeeping system before being permitted to clock in;

d.    Whether Defendant required Plaintiff and Class Members to perform post-shift work, including completing customer calls that extended beyond scheduled shift end times before being permitted to clock out;

e.    Whether such pre-shift and post-shift work constitutes compensable work time under applicable state wage laws;

f.    At what common rate, or rates subject to common methods of calculation, was and is Defendant required to pay Plaintiff and Class Members for their work;

g.    Whether Defendant properly notified Plaintiff and Class Members of their hourly rate and overtime rate;

h.    Whether Defendant properly compensated Plaintiff and Class Members for their hourly rate and overtime rate;

i.    Whether Defendant paid Plaintiff and Class Members for the actual hours that they worked; and

j.    Whether Defendant's timekeeping and pay records are inaccurate due to its

uniform policies and practices of not compensating employees for all time worked.

## **STATEMENT OF FACTS**

*Plaintiff PALIY's Employment and Wage & Hour Allegations*

53.    On or around November 19, 2024, Plaintiff was hired to work as a Customer Service Representative for Defendant at an hourly rate of $23.00 per hour. Plaintiff worked for Defendant from November 19, 2024 through July 11, 2025.

54.    Throughout Plaintiff's employment with Defendant, Plaintiff was scheduled to work 40 hours per week on overnight shifts, typically from 10:00 pm to 6:30 am, five days per week.

55.    At all relevant times, Plaintiff worked her scheduled hours and worked hours beyond those scheduled hours which, as detailed below, were not compensated by Defendant. FLSA Collective Plaintiffs and Class Members were assigned similar schedules and like Plaintiff worked hours in excess of those schedules which were not compensated by Defendant.

56.    Throughout Plaintiff's employment with Defendant, Plaintiff was compensated at an hourly rate of approximately $23.00 per hour and received an average weekly paycheck of $920.00 for her 40-hour workweek.

57.    FLSA Collective Plaintiffs and Class Members, including approximately 200 Customer Service Representatives employed by Defendant, received similar hourly compensation rates and were subject to the same timekeeping and compensation policies set by Defendant.

*Wage And Hour Allegations All Class Members*

58.    Throughout Plaintiff's employment with Defendant and regardless of location worked (including remote at home work), Plaintiff, FLSA Plaintiffs, and Class members performed work for which they were not compensated.

59.    At all times relevant, Defendant required Plaintiff, FLSA Plaintiffs, and Class members to clock in through Defendant's ADP timekeeping application on their desktop computers rather than through a stand-alone time-keeping system. This meant they could not clock-in until (i) their laptop computers were turned on and running, (ii) they had signed into Defendant's Virtual Private Network, and (iii) they had logged into the ADP system and other required software applications needed to perform their daily work.

60.    Neither Plaintiff nor other employees could clock in immediately upon beginning their shifts, as the laptop computers needed to be turned on, the VPN needed to be accessed, and the ADP system and other required software needed to be loaded, which took several minutes each shift.

61.    As a result of the foregoing policies, Plaintiff, FLSA Collective Plaintiffs, and Class members were time-shaved each shift by being forced to perform uncompensated off-the-clock work before being permitted to clock in.

62.    Plaintiff, FLSA Collective Plaintiffs, and Class members were also required to perform uncompensated work after their scheduled shift end times. Specifically, Defendant required employees to continue taking and completing customer calls that extended beyond their scheduled shift end times. Employees were not permitted to clock out until they had completed their final call, even when calls extended past the scheduled end of their shifts.

63.    As a result of the foregoing policies, Plaintiff, FLSA Collective Plaintiffs, and Class members were time-shaved at the end of each shift by being forced to perform uncompensated off-the-clock work after their scheduled shift end time before being permitted to clock out.

64.    Defendant knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class members for all hours worked, in

violation of the FLSA and state wage laws.

65.     Defendant knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class members at the proper overtime premium rate for all hours worked, in violation of the FLSA and state wage laws.

*Plaintiff's Disability, Leave, and Wrongful Termination*

66.     In late November 2024, shortly after Plaintiff was hired full-time by Defendant, Plaintiff began experiencing severe back pain due to a herniated disc at L4-L5.

67.     On April 21, 2025, Plaintiff's medical condition had deteriorated to the point where she was unable to sit longer than 10 minutes or walk or stand without severe pain. As a result, April 21, 2025 was Plaintiff's last day of work.

68.     On or around April 21, 2025, Plaintiff requested and was granted medical leave. Plaintiff submitted her request for medical accommodation through The Hartford, Defendant's third-party leave administrator.

69.     Plaintiff's medical leave and short-term disability benefits were approved by The Hartford through July 31, 2025.

70.     On June 3, 2025, while on approved medical leave, Plaintiff underwent her first surgery to address her herniated disc and nerve damage.

71.     On June 30, 2025, Plaintiff was required to undergo a second emergency surgery due to severe nerve damage that had not been resolved by the first surgery.

72.     Following her second surgery and in light of her ongoing medical condition, Plaintiff requested an extension of her medical leave through October 19, 2025, to allow adequate time for recovery and physical therapy.

73.     Plaintiff's short-term disability and New York State disability benefits were

approved by The Hartford through October 19, 2025 and October 24, 2025, respectively.

74.    On or around June 7, 2025, Plaintiff informed Marla Prince, Defendant's Senior HR Generalist, over the phone that Plaintiff needed an extension of her medical leave. Ms. Prince indicated to Plaintiff that the extension would be approved.

76.    On July 11, 2025, while Plaintiff was still in Florida recovering from her second surgery and while her medical accommodation remained approved and in effect through July 31, 2025, Plaintiff received a phone call from Ms. Prince and other members of Defendant's HR team. During this call, Defendant informed Plaintiff that her employment was being terminated.

77.    Defendant's stated reason for terminating Plaintiff's employment was that due to "business need" and Plaintiff's inability to return to full time work until after October 2025, Defendant could not hold Plaintiff's position, would not engage in additional interactive discussions accommodation, and would not approve an extension of Plaintiff's medical accommodation beyond July 31, 2025.

78.    Defendant informed Plaintiff that she would be "eligible for rehire" if a position became available after she was cleared to return to work.

79.    On July 14, 2025, Plaintiff sent an email to Ms. Prince seeking clarification regarding her termination while she was still under medical accommodation through August 1, 2025, and while her disability coverage remained active.

80.    In response, on July 14, 2025, Ms. Prince sent Plaintiff an email stating: "Your medical claim is approved through 7/31/2025 and your life insurance and LTD coverage end on that date as well. We ended your employment on 7/11/2025 since we received notification you are not returning until after 10/19 and due to business need, we will not approve the medical extension after 7/31/2025, but have noted you are eligible for rehire when you are able to return provided

there is a business need. Your disability coverage remains active and you are approved through 10/19/2025."

81.    At all times relevant, Defendant employed over 300 employees, including approximately 200 Customer Service Representatives performing the same or substantially similar duties as Plaintiff.

82.    Due to Defendant's premature termination of Plaintiff's employment while she was on approved medical leave, Plaintiff no longer qualified for long-term disability benefits and has been forced to pay out of pocket for physical therapy and ongoing medical treatment.

83.    Plaintiff retained Joseph & Norinsberg LLC to represent her in this litigation and has agreed to pay the firm a reasonable fee for its services.

## FIRST CAUSE OF ACTION
### (Violation of the Fair Labor Standards Act - FLSA Collective Action)

84.    Plaintiff realleges and reavers each and every previous allegation as if fully set forth herein.

85.    At all relevant times Plaintiff and the other FLSA Collective Plaintiffs were employees of the Defendant within the meaning of the FLSA, and were persons covered by and intended to benefit from the provisions of the FLSA.

86.    As alleged herein, Plaintiff and the other FLSA Collective Plaintiffs regularly worked regular and overtime hours for Defendant for which they were not paid, in violation of the FLSA.

87.    Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the other FLSA Collective Plaintiffs for all of the hours they worked, including overtime hours, when Defendant knew or should have known such was due.

88.    Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the other FLSA Collective Plaintiffs for the proper overtime rate when Defendant knew or should have known such was due.

89.    As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and the other FLSA Collective Plaintiffs suffered damages in the form of unpaid regular and overtime wages. Plaintiff and the other FLSA Collective Plaintiffs seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the FLSA.

## SECOND CAUSE OF ACTION
### (Violation of the New York Labor Law - NYLL Class Action)

90.    Plaintiff realleges and reavers each and every previous allegation as if fully set forth herein.

91.    At all relevant times Plaintiff and the other New York Class members were employees of the Defendant within the meaning of the NYLL, and were persons covered by and intended to benefit from the provisions of the NYLL.

92.    As alleged herein, Plaintiff and the other New York Class members regularly worked regular and overtime hours for Defendant for which they were not paid, in violation of the NYLL.

93.    Defendant violated NYLL Article 6 and Article 19 by failing to pay Plaintiff and the other New York Class members for all hours worked, including the pre-shift off-the-clock work (turning on laptop computers, logging into Defendant's virtual private network, and signing into the ADP timekeeping system before being permitted to clock in) and post-shift off-the-clock work (completing customer calls that extended beyond scheduled shift end times before being permitted to clock out).

94.    As a result of Defendant's failure to compensate Plaintiff and the other New York Class members for all hours worked, Defendant failed to pay wages and overtime compensation at the rate of one and one-half times the regular rate as required by the NYLL and its supporting regulations, including 12 N.Y.C.R.R. § 142-2.2.

95.    Defendant violated NYLL § 195(1) by failing to provide Plaintiff and the other New York Class members with accurate wage notices at the time of hiring.

96.    Defendant violated NYLL § 195(3) by failing to provide Plaintiff and the other New York Class members with accurate wage statements with each payment of wages, as the statements did not reflect all hours worked.

97.    Defendant knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to compensate Plaintiff and the other New York Class members for all of the hours they worked, including overtime hours, when Defendant knew or should have known such was due, and their failure to provide Plaintiff and the other New York Class members with accurate wage notices and wage statements.

98.    As a direct and proximate result of Defendant's willful disregard of the NYLL, Plaintiff and the other New York Class members suffered damages in the form of unpaid regular and overtime wages. Plaintiff and the other New York Class members seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages equal to 100% of the unpaid wages, statutory penalties for wage notice and wage statement violations, pre- and post-judgment interest, and reasonable attorneys' fees and costs, as provided for under the NYLL.

**THIRD CAUSE OF ACTION**
**(Violation of Applicable State Wage and Hour Laws - Nationwide Rule 23 Class)**

99.    Plaintiff realleges and reavers each and every previous allegation as if fully set forth

herein.

100.    Plaintiff brings this claim on behalf of the nationwide Rule 23 Class.

101.    At all relevant times, Class Members in each respective state were employed by Defendant within the meaning of their state's wage and hour laws, just as Plaintiff was employed by Defendant under the meaning of the FLSA and NYLL.

102.    Plaintiff can represent the nationwide Class because the core legal question— whether unpaid "boot-up" time and post-shift work is compensable—is substantially similar across state laws, which often follow the FLSA's "suffer or permit to work" standard. The requirements of the FLSA and the requirements of the state labor laws enumerated earlier are identical or substantially similar for purposes of the wage and hour class claims.

103.    Defendant knowingly and willfully violated Plaintiff and Class Members' rights under their respective state laws by failing to pay them for all hours worked, including the pre-shift off-the-clock work (turning on laptop computers, logging into Defendant's virtual private network, and signing into the ADP timekeeping system before being permitted to clock in) and post-shift off-the-clock work (completing customer calls that extended beyond scheduled shift end times before being permitted to clock out).

104.    As a result of Defendant's failure to compensate Plaintiff and Class Members for all hours worked, Defendant failed to pay wages and overtime compensation at the rate of one and one-half times the regular rate as required by the respective state wage and hour laws outlined in Paragraph 5 above and their supporting regulations.

105.    Defendant knowingly and willfully failed to provide proper wage statements and notices to Class Members, as required under the laws of applicable states including but not limited to New York, California, and other states with similar requirements.

106.     Due to Defendant's state law violations, Plaintiff and Class Members are entitled to recover from Defendant their unpaid wages, unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated or treble damages as applicable under each state's law, reasonable attorneys' fees and costs and disbursements of the action, and all other available remedies under each respective state law.

107.     In addition to violations of State Labor overtime laws under which Plaintiff brings class (not individual) claims, Defendant violated State provisions requiring employers to pay employees all wages owed. Since overtime wages are owed under the FLSA and applicable state laws, these laws encompass Class Members' claims just as much as would explicit overtime requirements. These state law provisions include the following:

> [e]ach employer in [Arizona] shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to his employees [and that] [e]ach employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employees up to such date . . . .[o]vertime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

Ariz. Rev. Stat. § 23-351(C); *see also Weeks v. Matrix Absence Mgmt.*, 2022 U.S. Dist. LEXIS 30849 (D. Ariz. 2022)

> Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs.

Florida Minimum Wage Act, Fla. Stat. § 448.110(6)(c)(1)

> Damages recoverable by an employee. When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. In other instances the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.

Iowa Wage Payment Collection Law, Chapter 91A.8; *see also Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 883 (N.D. Iowa 2008) ("[T]he FLSA may be used to establish an employee's right to a certain amount of wages under the IWPCL and an employer's violation of the IWPCL for not paying all wages due its employees." (quotation omitted))

> (a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

> (b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

Louisiana Wage Payment Act, La. R.S. § 23:631(A)(1)

> An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court. If an employee establishes a claim and secures judgment on the claim, such employee shall be entitled to recover the full amount of the judgment and all costs of such suit, including reasonable attorney's fees.

Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1231(1)

> In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow. Any civil action for the recovery of wages must be commenced within three years after the wages become due.

South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-80(C).

108.    The Florida Minimum Wage Act has a pre-suit notice requirement. Fla. Stat. § 448.110(6)(a). However, Plaintiff invokes the Florida Minimum Wage Act not only in her individual capacity but to bring class claims on behalf of Class Members residing in Florida. Thus, Plaintiff is not personally required to provide Defendant with a pre-suit notice as to each Class Member. As to these absent Florida Class Members, courts in Florida have "found no authority mandating that a detailed pre-suit notice for each and every putative class member be served on

[d]efendants under § 448.110(6) prior to the filing of a putative class action under the FMWA."

*Griffith v. Landry's, Inc.*, 2016 U.S. Dist. LEXIS 196397, *12 (M.D. Fla. May 17, 2016).

109.    The Third Circuit Court of Appeals has clearly demonstrated the untenability of

any such requirement:

> We raise the following questions to further demonstrate the error of the proposed framework adopted by our dissenting colleagues. If the dissent's "colorable legal claim" test is a threshold inquiry for commonality, why should the court not consider every potential disqualifier from one's having a "colorable legal claim?" For example, in any class certification case, should the court consider whether all potential class members complied with applicable pre-notice requirements under the relevant substantive law? Should the court consider whether every potential class member exhausted her administrative remedies under the relevant substantive law? Should the court evaluate whether each class member's claim complies with the applicable statute of limitations? The answers to these questions most certainly implicate whether a litigant, in a class action or otherwise, has a "colorable legal claim." These questions, moreover, show how flawed, from an administrative, logical, and practical standpoint, the dissent's and objectors' approach really is. No class would ever be certified because it would be impossible to demonstrate that every class member has a "colorable legal claim." (Dissenting Op. at 10.) More than this, it would gut commonality, for, most certainly, individual issues would then predominate. There would simply be no class that could meet this commonality and predominance test.

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 310 (3rd Cir. 2011).

110.    Some states' wage and hour or wage payment statutes may prescribe means other

than class actions for pursuing common claims. Any state restrictions on class actions are

irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil

Procedure hold. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400,

130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board"

notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health Scis. Grp., Inc.*

*(In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014)

("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling

Act. Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on

the state statutes prohibiting class actions."); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d

1331, 1336 (11th Cir. 2015) ("The bottom line is this. The Alabama statute restricting class actions,

like the New York statute at issue in Shady Grove, does not apply in federal court. Rule 23

controls.").

111.    Due to Defendant's state law violations, Plaintiff and Class Members are entitled

to recover from Defendant their unpaid wages, unpaid overtime compensation, damages for

unreasonably delayed payments, statutory penalties, liquidated or treble damages as applicable

under each state's law, pre- and post-judgment interest, reasonable attorneys' fees and costs and

disbursements of the action, and all other available remedies under each respective state law.

## FOURTH CAUSE OF ACTION
### (Breach of Contract and/or Unjust Enrichment - Rule 23 Class)

112.    Plaintiff realleges and reavers each and every previous allegation as if fully set

forth herein.

113.    To the extent that the Fair Labor Standards Act and/or state wage laws do not

protect employees for a failure to compensate gap-time claims (claims for unpaid wages for hours

worked up to forty which do not implicate statutory minimum wage laws), Plaintiff and Class

Members assert such claims under breach of contract and unjust enrichment.

114.    When Plaintiff and Class Members entered into employment with Defendant, the

parties formed implied contracts, which contain inherent duties of good faith and fair dealing, to

pay employees at agreed upon hourly rates for all hours worked.

115.    Plaintiff and Class Members provided services to Defendant as required under

their agreements. However, Defendant's failure to compensate all hours of work, including gap-

time hours, breached Plaintiff's and Class Members' agreements.

116.    As a direct and proximate result of Defendant's failure to act fairly and in good

faith, Plaintiff and Class Members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

117.    Moreover, absent an implied contract, by virtue of Defendant's conduct as alleged herein, and Plaintiff's and Class Members' performance, Defendant was unjustly enriched by Plaintiff's and Class Members' conduct and did not compensate Plaintiff and Class Members fully.

118.    The circumstances are such that it would be inequitable to allow Defendant to retain the excess benefit from Plaintiff's and Class Members' conduct without paying fair value for it.

119.    As a direct and proximate result of Defendant's wrongful withholding of funds that should have been paid to Plaintiff and Class Members, they have sustained damages in an amount according to proof at trial.

120.    Defendant's withholding of proper compensation from employees was done with malice and in conscious disregard of Plaintiff's and Class Members' rights with the intent to cause injury to Plaintiff and Class Members. Plaintiff and Class Members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### **FIFTH CAUSE OF ACTION**
**(Discrimination and Retaliation in Violation of NYSHRL & NYCHRL - Individual Claim)**

147.    Plaintiff realleges and reavers each and every previous allegation as if fully set forth herein.

148.    This claim is brought by Plaintiff PALIY individually pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"), and the New York City

Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq. ("NYCHRL").

149.     At all relevant times, Plaintiff was an employee of Defendant within the meaning of the NYSHRL and NYCHRL, and Defendant was Plaintiff's employer within the meaning of the NYSHRL and NYCHRL.

150.     Plaintiff's claims under the NYSHRL and NYCHRL must be analyzed separately and more liberally than their federal counterparts. The NYCHRL in particular requires an independent liberal construction analysis to accomplish the NYCHRL's uniquely broad and remedial purposes.

151.     At all relevant times, Plaintiff had a disability within the meaning of the NYSHRL and NYCHRL. Plaintiff suffered from a herniated disc at L4-L5 with severe nerve damage, a physical impairment that substantially limited one or more major life activities, including but not limited to sitting, standing, walking, bending, lifting, and working.

152.     Defendant was aware of Plaintiff's disability and her need for accommodation. Plaintiff disclosed her disability to Defendant and requested a reasonable accommodation in the form of medical leave to recover from her herniated disc and surgical procedures.

153.     Defendant failed to engage in a good-faith interactive process to provide Plaintiff with a reasonable accommodation as required by the NYSHRL and NYCHRL. Despite Plaintiff's requests for an extension of her medical leave through October 19, 2025, Defendant terminated Plaintiff's employment on July 11, 2025, while she was on approved medical accommodation leave through July 31, 2025.

154.     Defendant discriminated against Plaintiff based on her disability by terminating her employment because of her disability and her need for extended medical leave to recover from her disability. Defendant's stated reason for terminating Plaintiff—"business need" and Plaintiff's

inability to return to full time work until after October 19, 2025—was pretextual and motivated by discriminatory animus related to Plaintiff's disability.

155.    Defendant retaliated against Plaintiff for requesting reasonable accommodations and for taking protected medical leave. Plaintiff's termination was motivated at least in part by retaliatory animus related to her disability and her requests for leave.

156.    Defendant's termination of Plaintiff while she was on approved medical leave and while her short-term disability and state disability benefits remained approved through October 2025 constitutes unlawful discrimination and retaliation in violation of the NYSHRL and NYCHRL.

157.    As a direct and proximate result of Defendant's unlawful conduct in violation of the NYSHRL and NYCHRL, Plaintiff has suffered economic losses, and continues to suffer such losses, including lost wages and benefits, loss of long-term disability eligibility, and out-of-pocket medical expenses, for which she is entitled to an award of monetary damages.

158.    As a direct and proximate result of Defendant's conduct in violation of the NYSHRL and NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of compensatory damages for emotional distress.

159.    Defendant's actions were willful, wanton, malicious, and conducted in reckless disregard of Plaintiff's rights under the NYSHRL and NYCHRL, entitling Plaintiff to an award of punitive damages, particularly under the NYCHRL.

160.    Due to Defendant's discrimination and retaliation under the NYSHRL and NYCHRL, Plaintiff is entitled to recover from Defendant compensatory damages (including for

emotional distress), punitive damages, back pay, front pay, and reasonable attorneys' fees and costs, and all other penalties the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court assume jurisdiction herein and thereafter grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, and applicable state wage laws;

b. An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. Certification of the FLSA Collective Action pursuant to 29 U.S.C. § 216(b) and designation of Plaintiff as the representative of the FLSA Collective Plaintiffs;

d. Certification of the Nationwide Rule 23 Class Action and the New York Class Action pursuant to F.R.C.P. 23 and designation of Plaintiff as the representative of the Class;

e. An award of unpaid wages, including overtime, due under the FLSA, NYLL, and all applicable state wage laws;

f. An award of liquidated damages pursuant to the FLSA, NYLL, and all applicable state wage laws as a result of Defendant's willful failure to pay proper wages, including overtime compensation;

g. An award of statutory penalties for wage statement violations pursuant to NYLL § 195 and all applicable state wage laws;

h. An award of compensatory damages for emotional distress pursuant to the NYSHRL, and NYCHRL;

i. An award of punitive damages pursuant to the NYSHRL, and NYCHRL as a result of Defendant's willful, wanton, malicious, and reckless conduct;

j. An award of back pay and front pay pursuant to the NYSHRL, and NYCHRL;

k. Pre-judgment and post-judgment interest;

l. An award of reasonable attorneys' fees and costs pursuant to the FLSA, NYLL, applicable state wage laws, the NYSHRL, and NYCHRL; and

m.   Such other and further relief as the Court deems just and proper.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

### NY BCL § 630 NOTICE AND DEMAND

Plaintiff hereby gives this notice, in writing, to the ten largest members of Defendant MEDICAL ANSWERING SERVICES, LLC, and any of its parents, subsidiaries, or affiliated entities that is served with the summons and complaint in this action, that Plaintiff intends to hold the members liable under New York Limited Liability Company Law § 609. This notice is given within one hundred and eighty days after termination of Plaintiff's employment.

Plaintiff also demands an examination of the record of members as permitted by law.

An action to enforce such liability shall be commenced within ninety days after the return of an execution unsatisfied against the limited liability company upon a judgment recovered against it for such services.


Dated: October 31, 2025
       New York, New York


Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

By: _____
       Robert Kansao, Esq.
       *Attorneys for Plaintiff and the Putative Class*
       825 Third Ave., Suite 2100
       New York, New York 10022
       (212) 227-5700
       robert@employeejustice.com